CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

FEB 25 2019

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| BRIAN E., | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 4:17-cv-00049 |
| v. | ) |
| | ) REPORT & RECOMMENDATION |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) By:   Joel C. Hoppe |
|     Defendant. | )         United States Magistrate Judge |

Plaintiff Brian E. asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs, and the applicable law, I find that substantial evidence supports the denial of benefits. Accordingly, I recommend that the presiding District Judge affirm the Commissioner's decision and dismiss this matter.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v.*

1

*Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th

Cir. 2017); 20 C.F.R. § 416.920(a)(4).[1] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In the fall of 2013, Brian E. filed for DIB and SSI alleging that he had been unable to work since June 1, 2003, his alleged onset date ("AOD"), because of diabetes, leg problems, and swelling in his foot. *See* Administrative Record ("R.") 184–85, 191–98, 212, ECF No. 9-1. Brian E. was forty-one years old, or a "younger person" under the regulations, on his AOD. R. 54, 208; 20 C.F.R. § 416.963(c). Disability Determination Services ("DDS"), the state agency, denied his claims initially in March 2014, R. 54–65, and upon reconsideration in August 2014, R. 68–81. On February 1, 2016, Brian E. appeared with counsel and testified at an administrative hearing before ALJ Brian B. Rippel. *See* R. 28–42. A vocational expert ("VE") also testified. R. 42–50. At the hearing, Brian E. amended his AOD to September 20, 2013, for his SSI claim and withdrew his claim for DIB, which the ALJ dismissed. R. 31–33; *see* R. 87–88.

ALJ Rippel issued an unfavorable decision on February 16, 2016. R. 87–94. He found that Brian E. had medically determinable impairments of "diabetes mellitus type 2, diabetic neuropathy, an impairment affecting the male genital organs, hypertension, hyperlipidemia, an acquired trigger finger, and tobacco dependence syndrome." R. 90. The ALJ found that none of these medically determinable impairments, whether alone or in combination, "significantly limited" Brian E.'s ability to perform basic work-related activities for a period of twelve months or more; thus, they were not "severe" impairments. R. 90. Accordingly, he found that Brian E. was not disabled. R. 93–94. Brian E. submitted additional evidence to the Appeals Council. R. 2,

---

[1] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

14–24, 51–53. The Appeals Council found that the additional evidence did not present a reasonable probability of changing the outcome, and it declined to review the ALJ's decision. R. 1–4. This appeal followed.

### III. Discussion

Brian E. argues on appeal that ALJ Rippel erred in finding his trigger finger and diabetic neuropathy impairments non-severe. Pl.'s Br. 5–9, ECF No. 14. In particular, Brian E. asserts that the ALJ improperly evaluated his report of symptoms. His arguments are not persuasive.

*A.   Medical Evidence*

On August 8, 2013, Brian E. was admitted to the emergency department for a groin abscess that required incision, drainage, and wound care. *See* R. 308. The attending physician noted that Brian E. had "uncontrolled" diabetes mellitus, type 2, for which he had not taken any medication in at least eighteen years. *Id.* Brian E. complained of foot numbness and "some" leg edema, but physical exam findings were normal, including no edema of the extremities. R. 308–09. He was started on insulin, which provided good control for his previously elevated blood sugars, and instructed in following a diabetic diet. R. 291, 309, 339. He was discharged on August 13 and continued to receive treatment for his wound through January 2014. R. 347–55.

On December 13, 2013, Brian E. visited Halifax Primary Care and requested a refill for his insulin. R. 361–62. He reported no symptoms, and his physical exam was essentially normal, including no leg or pedal edema and normal gait. R. 361–62. His blood pressure was elevated, and his diabetes was "not controlled." R. 362–63. His dosage of insulin was increased. R. 361. On March 27, 2014, Brian E. established primary care with Shannon E. Runion, F.N.P. *See* R. 379–82. He complained of right leg pain; occasional bilateral foot numbness, swelling, and edema; and occasional mild back pain and stiffness. R. 379–80. Physical exam findings were

4

normal, including no leg or foot edema and normal gait. R. 381. F.N.P. Runion encouraged him to eat a healthier diet, drink plenty of water, and exercise regularly. R. 382. She also prescribed gabapentin for his bilateral lower extremity pain, which she attributed to diabetic neuropathy. *Id.* Brian E. had a follow-up appointment in July 2014. R. 376–78. He was doing well. R. 376. He reported no joint or muscle pain or edema, and he complained only of "right hand numbness at times but he [was] not concerned about this and [did] not want further evaluation at th[at] time." R. 376–77. His physical exam was normal. R. 377. F.N.P. Runion diagnosed diabetic peripheral neuropathy and assessed his diabetes and hypertension as "controlled." R. 377–78. She continued his current medications and recommended that he stop smoking, lose weight, and exercise regularly. *Id.*

Almost a year passed before Brian E. sought treatment again. On June 11, 2015, he went to an appointment with his primary care provider where he saw Zeporah Sykes, D.O. R. 395. The note provides little information: it documents Brian E.'s complaint of right hand pain, his vital signs, and assessments of "acquired trigger finger[] acute, moderate" and "chronic, controlled" diabetic peripheral neuropathy. *Id.* Brian E. followed up with Dr. Sykes on September 11. R. 401–04. He reported taking insulin during the day and at night, and Dr. Sykes noted that his diabetes was controlled. *See* R. 401, 403. He also took gabapentin for neuropathy and tolerated it well. R. 401. Brian E. reported that his orthopedist provided a steroid injection for his trigger finger, but it did not relieve his pain. R. 401. Aleve offered pain relief, but he could only take it occasionally, not daily. R. 401, 403. With the exception of tenderness to palpation of Brian E.'s right trigger finger, Dr. Sykes's physical exam findings were entirely normal. R. 402–03. The only condition Dr. Sykes assessed as "not controlled" was Brian E.'s acquired trigger finger, for which she recommended that he continue treating with an orthopedist "in case he changes his

mind regarding surgery." R. 403. She also recommended weight loss, healthy eating, and regular physical activity. R. 404.

B.   *Medical Opinions*

On March 11, 2014, Richard Surrusco, M.D., reviewed Brian E.'s medical record for the state agency. R. 54–59, 60–65. He determined that Brian E. had medical impairments of essential hypertension, diabetes mellitus, and disorders of the male genital organs and that these impairments were "nonsevere" because they did not significantly limit his ability to perform basic work activities. R. 58, 64–65. He assessed no functional limitations. *See id.* On reconsideration review, Lewis Cylus, M.D., affirmed Dr. Surrusco's findings. *See* R. 68–74, 75–81.

C.   *Additional Evidence Submitted to the Appeals Council*

Brian E. also submitted three medical records to the Appeals Council that were not included in the record before ALJ Rippel.

On July 13, 2015, Brian E. saw James A. Treadwell, M.D., at the orthopedics clinic. R. 51–53. Brian E. reported pain in his right trigger finger and tingling and numbness in all digits of his right hand. R. 51. His pain increased at night, and he had pain with tingling when he drove or talked on the phone. *Id.* Naproxen did not alleviate his pain. *Id.* Other than his right hand problems, he was "doing quite well." *Id.* On examination, Dr. Treadwell noted that Brian E.'s right ring finger had a palpable nodule, was in a flexed posture, and could not be fully extended. R. 52. Brian E. had positive Tinel's and Phalen's signs on direct compression of the wrist, and he had positive flexion test and Tinel's at the elbow. R. 53. Dr. Treadwell assessed carpal tunnel syndrome, acquired trigger finger, and cubital tunnel syndrome, all acute and moderate. *Id.* He injected Brian E.'s right ring finger with dexamethasone and lidocaine. *Id.* He further discussed

6

with Brian E. "the natural history of trigger digits as well as carpal and cubital tunnel syndromes," and he made a referral for an EMG and nerve conduction study. *Id.* No records provided to the ALJ or the Appeals Council show that Brian E. underwent these studies or followed up with the orthopedist for further treatment.

In January and May 2016, Brian E. visited his primary care provider and was seen by Amanda J. Igata, F.N.P. *See* R. 14–20. At both visits he complained of right hand pain and reported that his orthopedist had recommended surgery, but that he could not afford it. R. 14, 17. F.N.P. Igata noted right wrist joint tenderness on exam, but all other findings were normal. R. 16, 19. All of Brian E.'s conditions other than right hand pain were controlled. *Id.*

D.   *Brian E.'s Statements*

In a functional report submitted to the state agency on November 15, 2013, Brian E. stated that he did light house and yard work, shopped in stores once a week for an hour, and regularly attended church on Sundays. R. 236–40. He reported that he had pain in his feet and legs and that his hands and fingers were numb. R. 241.

At the administrative hearing on February 1, 2016, Brian E. testified that his last employment ended in 2003 when he was laid off. R. 35. His wife worked, and he helped friends "[c]utting a little grass or something like that" to make money. R. 36. He was not seeking out any additional work because of diabetes, which caused problems in his "hand and arm and feet and legs and everything." *See* R. 35, 38. He had developed trigger finger in his right (dominant) hand, and his doctor said it required surgery. R. 39, 41. His feet swelled, and his hip and back hurt, limiting his abilities to walk and bend. R. 39–40.

E.   *Analysis*

    1.   *Step Two Finding that Impairments Were Not Severe*

7

Brian E. challenges the ALJ's determination that he did not have a severe impairment. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments "is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Conversely, a medical impairment or combination of impairments "can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual," *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that it does not meaningfully disrupt his or her ability to perform basic work activities, SSR 96-3p, 1996 WL 374181, at *2. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229–30 (4th Cir. 2011) (per curiam) (explaining that although step two involves "a threshold question with a de minimis severity requirement," "medical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss'" (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986))). "Basic work activities" are the fundamental "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 416.921(b), and include physical functions like standing, walking, lifting, carrying, and handling, *see* R. 90.

The ALJ determined that Brian E.'s diabetic neuropathy and trigger finger were medically determinable impairments, but that they did not (and were not expected to) significantly limit his ability to perform basic work-related activities for a period of twelve continuous months or more. R. 90. In reaching this conclusion, the ALJ discussed Brian E.'s statements about his limitations and found that his "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible" based

upon the longitudinal medical record as a whole. R. 91. The ALJ then recited all of the relevant medical evidence in the record, including the opinions of the DDS physicians, and determined that the medical record did not establish an impairment that would significantly limit Brian E.'s ability to perform work-related functions. R. 91–93. Although the ALJ's analysis is sparse, the record simply does not contain any evidence that undermines his conclusion that Brian E.'s diabetic neuropathy and trigger finger do not cause more than minimal work-related limitations. *Cf. Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (finding no reversible error where the ALJ's factual findings related to the relevant time were "amply supported by the record" and the claimant "failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim").

   Treatment notes show that Brian E. complained of occasional foot and hand numbness, and he has been diagnosed with diabetic neuropathy and acquired trigger finger. He was prescribed gabapentin to manage his neuropathy, which he took as prescribed and tolerated well. Nevertheless, physical examinations repeatedly showed no abnormal findings related to neuropathy, and in July 2014, Brian E. expressed no concern about his reported right hand numbness and refused further evaluation. Furthermore, after July 2014, Brian E. made no more complaints about foot numbness, and his medical providers consistently noted normal exam findings of his lower extremities, including that he had a normal gait. Brian E. contends that "peripheral neuropathy caused by diabetes *can be* sufficiently painful to pose significant limitations on a person's ability to walk and stand, and perhaps even to sit," Pl.'s Br. 6 (emphasis added), but he does not point to any evidence in the record not considered by the Commissioner establishing that this condition *actually* significantly limited his functional capacities during the relevant time. Indeed, no medical provider identified any limitations attributable to foot or hand

9

neuropathy, and this condition was noted to be controlled, as was his diabetes. *Cf. Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Justus v. Soc. Sec. Admin.*, No. 4:14cv45, 2015 WL 5510921, at *8 (W.D. Va. Sept. 17, 2015) ("[A] treating physician's failure to impose 'symptom-related functional limitations and restrictions' can weigh against the claimant's credibility." (quoting 20 C.F.R. § 416.929(c)(3) (2013)). "[M]edical conditions alone do not entitle a claimant to disability benefits; '[t]here must be a showing of related functional loss.'" *Felton-Miller*, 459 F. App'x at 229–30 (quoting *Gross*, 785 F.2d at 1166). The medical record simply does not establish a functional loss related to Brian E.'s neuropathy. Moreover, in light of this record, the ALJ could reasonably rely on the DDS experts' opinions that Brian E.'s peripheral neuropathy did not cause more than minimal functional limitations in his basic work functioning. *See Woods v. Berryhill*, 888 F.3d 686, 697 (4th Cir. 2018); 20 C.F.R. § 416.927(c)(3)–(4).

As for his other medically determinable impairment, Brian E. first complained of trigger finger symptoms in June 2015, more than two years after his amended AOD. In two examinations, the only abnormal finding noted by Dr. Sykes was that Brian E.'s finger was tender. Brian E. said that a steroid injection had not relieved his pain, but Aleve helped, although he could not take it daily. Dr. Sykes imposed no limitations and recommended that he continue to see an orthopedist in the event Brian E. changed his mind about having surgery. These treatment notes show that Brian E. had some trigger finger tenderness, but they do not contain any information showing signs, objective findings, or activity restrictions that suggest any limitations attributable to trigger finger. Thus, the ALJ reasonably found that the medical evidence did not establish more than minimal functional limitations related to this condition.

Brian E. contends that the ALJ's analysis of his report of symptoms was deficient, but he does not identify any statement of his that showed functional limitations related to neuropathy or trigger finger.[2] Although Brian E. at times complained to treatment providers of hand pain or numbness, he did not attribute any functional limitation to those symptoms or his trigger finger. As his counsel acknowledges, Pl.'s Br. 3, at the administrative hearing, Brian E. appears to have begun to explain how trigger finger affected his hand, but he did not actually identify any limitation before he moved on to the next question, *see* R. 39 (Q: "And how does [trigger finger] affect your hand?" A: "I can't hardly –" Q: "Have you been to a doctor about that?" A: "Yes, sir."). Brian E. also said his hand needed an operation, but he said he still could lift thirty pounds, and he did not say he had any manipulative limitations. R. 40. If Brian E. experienced limitations from his trigger finger, it is unfortunate that he did not present them to the ALJ. *See Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) (explaining that when a claimant is represented by counsel at the hearing level, the ALJ generally is "entitled to assume that the applicant is making his strongest cases for benefits" (quotation marks omitted)). I cannot fault the ALJ, however, for not crediting a claimant's purported limitations that neither the claimant nor his treatment providers identified.

The ALJ offered one additional reason for questioning the credibility of Brian E.'s report of symptoms. He noted that Brian E. did not have a consistent history of substantial gainful

---

[2] The regulations set out a two-step process for ALJs to evaluate a claimant's symptoms. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 416.929. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis*, 858 F.3d at 866. Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects," *id.*, and articulate specific reasons for the weight assigned to those statements, *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013).

employment. In most instances, the Court looks upon this reason with skepticism because it often says little about a person's functional abilities. In this case, however, the record supports the ALJ's position. Brian E. stopped working in June 2003 when the factory where he worked closed. R. 212. Initially, Brian E. claimed an AOD as of that date, but the record contains no treatment notes from the time he stopped working until August 2013, much less any medical evidence that he had disabling impairments during that period. Understandably, he amended the AOD to September 20, 2013. Thus, the record shows that Brian E. did not work during a ten-year period prior to alleging he became disabled. Based on this lengthy period where Brian E. did not perform substantial gainful employment, the ALJ could reasonably conclude that factors other than allegedly disabling limitations contributed to Brian E. not working.

The ALJ thoroughly discussed the medical evidence and Brian E.'s statements. His step two analysis was rather sparse, but considering the overwhelming evidence in the record showing minimal abnormal findings, I am constrained to find that the record provides substantial evidence to support the ALJ's rationale and conclusion that Brian E. had no more than minimal work-related functional limitations.

2. *Evidence Submitted to the Appeals Council*

Brian E. submitted three treatment notes to the Appeals Council, but it determined that the evidence "does not show a reasonable probability that it would change the outcome of the decision." R. 2. I agree. Additional evidence submitted to the Appeals Council may warrant remand if it is new, material, and relates to the period prior to the date of the ALJ's decision. 20 C.F.R. § 416.1470(a)(5) (2017); *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the

outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins*, 953 F.2d at 96).

The treatment notes from Brian E.'s family nurse practitioner dated January and May 2016 provide similar information as the notes from another family nurse practitioner that were in the record before the ALJ. Thus, they are cumulative and not material.

Dr. Treadwell's notes from July 2015 are new, in that they contain medical information from a specialist that was not before the ALJ, and they relate to the period before the ALJ's decision in February 2016. The issue is whether they are material. Dr. Treadwell noted that Brian E.'s trigger finger had a palpable nodule, was in a flexed position, and could not be extended. Although Brian E. reported some hand pain and tingling when driving or talking on the phone, he did not say he was unable to do these or any other activities because of his trigger finger. And Dr. Treadwell did not note any limitations or impose any functional restrictions. He administered a steroid injection and discussed further treatment with Brian E., although his notes do not substantiate Brian E.'s report that Dr. Treadwell thought surgery was necessary. Furthermore, the record does not show that Brian E. ever followed up with Dr. Treadwell. Thus, this treatment note provides evidence of a one-time visit to an orthopedist, who observed some signs of trigger finger, but identified no functional limitations. Without any evidence of follow-up treatments, recommendations to limit activity, treatment plans that reflect reduced functioning, or opinions of functional limitations, I cannot find that this single treatment note creates a reasonable possibility of a different outcome if this case were remanded. *Cf. Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013) (declining to remand where a new medical report submitted to the Appeals Council did "not identify a condition that the ALJ had not already considered" and did not "identify or describe any functional limitations" suggesting the

claimant's impairment was "more severe that had already been established" in the ALJ's decision). Accordingly, I find that this evidence is not material.

IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's denial of benefits in this case. Accordingly, I respectfully recommend that the presiding District Judge **DENY** the Plaintiff's motion for summary judgment, ECF No. 13, **GRANT** the Commissioner's motion for summary judgment, ECF No. 15, **AFFIRM** the Commissioner's final decision, and **DISMISS** the case from the Court's active docket.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the parties.

ENTER: February 25, 2019

Joel C. Hoppe
United States Magistrate Judge